**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAWN NYHOLM, : | Civil Action No. 19-17748 (SRC) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| COMMISSIONER OF : | |
| SOCIAL SECURITY, : | |
| Defendant. : | |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff Dawn Nyholm ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning June 1, 2011. A hearing was held before ALJ Marguerite Toland (the "ALJ") on September 11, 2018, and the ALJ issued an unfavorable decision on February 26, 2019. Plaintiff sought review of the decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

1

In the decision of February 26, 2019, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform sedentary work, with certain limitations. At step four, the ALJ also found that this residual functional capacity was not sufficient to allow Plaintiff to perform any of her past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on four grounds: 1) at step two, a word is missing from a sentence; 2) at step four, the ALJ failed to credit a treating physician's opinion that Plaintiff needed breaks at work; 3) at step four, the ALJ failed to consider the evidence regarding bathroom use, endometriosis, and headaches; and 4) the ALJ did not follow the prior order of the district court.

The Table of Contents of Plaintiff's brief indicates that Plaintiff has only one argument, that "the ALJ failed to follow the prior order of the Federal Court," but the body of the brief has additional arguments. Plaintiff does argue first: "The ALJ failed to follow the prior order of the Federal Court by failing to adequately discuss all of the Plaintiff's severe and non-severe impairments in the RFC." (Pl.'s Br. 16.) The record contains that Order, dated March 31, 2017. (Tr. 860.) To be precise, the Order only remanded the case; in the Opinion, the Court did fault the Commissioner's previous final decision as Plaintiff contends. (Tr. 862-902.)

Plaintiff thus argues that the previous district court decision gave instructions to the ALJ

2

which, in the present decision, the ALJ did not follow. The problem for Plaintiff is that this argument is never developed; the brief contains no analysis of the evidence to demonstrate that the ALJ failed to address the concerns expressed in the prior district court decision. Plaintiff's brief does no more than cite the relevant ruling: "***Further, SSR 98-6p mandates that all of a Plaintiff's medically determinable impairments, both severe and non-severe, must be considered when setting the residual functional capacity***." (Pl.'s Br. 17.) No SSR has the number 98-6p, but SSR 96-8p does indeed state:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

Plaintiff has not offered any analysis which demonstrates that the ALJ's decision is contrary to this Ruling. Plaintiff's argument that the ALJ failed to remedy the defects found in the previous appeal does not go beyond a statement of its general premise. Plaintiff has not provided any support for the contention, based on the requirement stated in SSR 96-8p, that the ALJ, in formulating the residual functional capacity, failed to include a particular limitation predicated on a combination of severe and non-severe impairments.

The failure to develop this argument is particularly problematic in light of two issues: 1) the issue of the burden of proof at the first four steps of the sequential evaluation process; and 2) the harmless error doctrine. As to the burden of proof, Plaintiff bears the burden in the first four steps of the analysis of demonstrating how her impairments, whether individually or in

combination, amount to a qualifying disability.   Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

As to the harmless error doctrine, the Supreme Court explained its operation in a similar procedural context in Shinseki v. Sanders, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination.   The Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."   Id.   In such a case, "the claimant has the 'burden' of showing that an error was harmful."   Id. at 410.

Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful.   At the first four steps, this requires that Plaintiff also show that, but for the error, she might have proven her disability.   In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in her favor, based on the existing record, she is quite unlikely to show that an error was harmful.   As to Plaintiff's main argument, that the ALJ failed to follow the instructions in the previous district court decision, Plaintiff has neither articulated the basis for a decision in her favor, nor shown that any error harmed her.

Plaintiff next argues that a single sentence at step two is unclear and that there is a "mystery impairment."   (Pl.'s Br. 17.)   The sentence at issue is: "Although the claimant was diagnosed with affecting the feet and hands, the record does not support a finding that it causes more than minimal vocationally relevant functional limitations."   (Tr. 706.)   This argument is very close to frivolous.   It is very clear from the rest of that paragraph that there is a clerical error in the cited sentence, and that the ALJ was addressing Plaintiff's psoriasis, which is clearly stated four times in the sentences that follow.   (Tr. 706.)   Plaintiff is correct that the word

4

"psoriasis" appears to have been omitted from the sentence at issue and Plaintiff has correctly identified a minor typo. Plaintiff was in no way harmed by this typo.

Plaintiff next presents two paragraphs of various arguments under the subheading, "*Plaintiff's Mental Health.*" (Pl.'s Br. 18.) Plaintiff begins by conceding that, at step four, the ALJ included these two limitations in the residual functional capacity determination that reflected the mental health evidence:

> She is limited to low stress work (defined as unskilled work involving simple routine tasks and having no fast production rate pace in a strict production quotas such as assembly line work). She can have no more than occasional face-to-face interaction with the public.

(Tr. 708.) Plaintiff then asserts: "No explanation as to how the reported symptoms in the record, including uncontrolled anxiety, sleep disturbance, crying spells, fair social functioning, impaired recent and remote memory, are accounted for by those limitations." (Pl.'s Br. 18.) There, the paragraph ends. This appears to be a fragment of an argument. Plaintiff cites no authority for the proposition that the ALJ must expressly address every reported symptom in formulating the residual functional capacity determination – if that is, in fact, the argument Plaintiff intended to make. The authorizing statute, 42 U.S.C. § 405(g), directs this Court to review the ALJ's decision under the "substantial evidence" standard. The Court thus reviews the residual functional capacity determination to ascertain whether it is supported by substantial evidence. Plaintiff does not explain how this argument fragment connects to review under the substantial evidence standard, nor any other applicable legal principle.

Next, Plaintiff argues that the mental health evidence supports additional limitations to the residual functional capacity determination – but does not propose any specific limitations, nor assemble an argument that specific evidence was overlooked. Again, this is only the

5

beginning of an argument.

Plaintiff does suggest a specific additional limitation, tied to specific evidence, in the next argument: "The ALJ fails to credit any limitations for time off-task or absenteeism, inconsistent with the Plaintiff's treating physician's medical opinion that she would require unscheduled breaks as a result of her multiple limitations." (Pl.'s Br. 18.) Plaintiff cites to page 1379 in the record. Page 1379 is the second page of a two-page form completed by Dr. Justin Schweitzer on November 3, 2016, and Dr. Schweitzer states that his "specialty" is "family medicine." (Tr. 1379.)

Plaintiff overlooks the fact that the ALJ devoted an entire paragraph to discussion of this form on page 718 of the decision. The paragraph specifically mentions Dr. Schweitzer's opinions about Plaintiff's need for breaks. The ALJ stated that the report was given little weight because Dr. Schweitzer said that Plaintiff was seeing a pain specialist for medication, and the only evidence Dr. Schweitzer cited in support of his opinion was Plaintiff's complaints, rather than any objective findings. (Tr. 718.) This explanation is supported by the contents of the form: in the section which asked for the evidence supporting the assessment, Dr. Schweitzer wrote only this: "Patient c/o [word illegible] or chronic back pain in addition to fatigue & headaches." (Tr. 1379.) As the ALJ noted, on the form, Dr. Schweitzer also wrote: "Plaintiff sees pain specialist & medications cause fatigue & drowsiness." (Id.)

The ALJ's decision to give this particular form little weight seems entirely reasonable. First, the Court observes that Plaintiff's medical record is truly voluminous, with a great deal of medical evidence from many providers. Second, the ALJ considered different documents and reports from Dr. Schweitzer at several different points, and incorporated some but not all of that

6

evidence.  Third, on page 717, the ALJ discussed at greater length her reasons for giving little weight to similar opinions that Dr. Schweitzer had offered in a previous report.  The ALJ explained that, in summary, Dr. Schweitzer's conclusions were inconsistent with the evidence of record, that Dr. Schweitzer did not have specialized training in relevant medical specialties such as orthopedics, and that Dr. Schweitzer relied heavily on Plaintiff's subjective complaints for support.  (Tr. 717.)

In view of all these considerations, the ALJ's decision to give little weight to the form Dr. Schweitzer filled out on November 3, 2016 appears reasonable and in accordance with the law. Indeed, the form is completely uninformative as to why Plaintiff would be medically unable to work without these breaks.  Is it because of migraine, or back pain, or depression, or what? The only evidence Dr. Schweitzer cites on the form is Plaintiff's unspecified complaints about a number of different things.  The record is full of evidence from medical specialists as well as objective findings that could reasonably be given greater weight.

Furthermore, the Third Circuit has held:

> An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.

Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).  The ALJ's decision to give Dr. Schweitzer's form little weight is entirely consistent with Plummer: Dr. Schweitzer provided very little in the way of supporting explanation for his opinions about Plaintiff's need for breaks at work.

Plaintiff's brief then moves to considering some of Plaintiff's other medical issues. First, it addresses Plaintiff's "testimony that she needs to use the bathroom frequently.  (AR

7

709)." (Pl.'s Br. 19.) Plaintiff suggests that this should have resulted in some limitation in the residual functional capacity assessment. Plaintiff connects her bathroom testimony to the ALJ's discussion of a "urinary retention impairment," but the ALJ does not connect the two, nor does Plaintiff point to any evidence that her need to use the bathroom is so great that it constitutes a limitation to her residual functional capacity. All the record shows is that Plaintiff said that she needs to use the bathroom frequently. Most employers, perhaps all, provide restrooms for employees. Plaintiff has pointed to no evidence which supports finding a functional limitation.

Plaintiff next raises a challenge based on the evidence of headaches and endometriosis: "the ALJ explicitly found the claimant's headaches and endometriosis to be severe impairments at Step Two, yet no limitation is discussed as to either of these impairments." (Pl.'s Br. 19.) As the Commissioner points out in opposition, Plaintiff is simply wrong on both points. The ALJ discussed the evidence of endometriosis at step four on pages 714 to 715. The ALJ discussed the evidence of headaches in detail at step four on pages 713 through 714.

Plaintiff has failed to persuade this Court that the ALJ erred in her decision, or that she was harmed by any errors. This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

                                                  s/ Stanley R. Chesler
                                                  STANLEY R. CHESLER, U.S.D.J.

Dated: June 30, 2020